IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND



| | | |
|---|---|---|
| RCC TECHNOLOGY CORPORATION | * | |
| | * | |
| v. | * | Civil No. JFM-02-2539 |
| | * | |
| SUNTERRA CORPORATION | * | |
| ***** | | |

MEMORANDUM

This is an appeal from an order of the Bankruptcy Court denying the motion filed by Resort Computer Corporation ("RCC") to "deem rejected" a Software License Agreement ("SLA") between it and the debtor, Sunterra Corporation. I will affirm the order, albeit it on grounds different from those articulated by the Bankruptcy Court. This memorandum briefly states the reasons for my ruling.[1]

A. <u>Is the SLA an Executory Contract?</u>

The Bankruptcy Court found that the SLA is not an executory contract. If the Bankruptcy Court had been writing on a clean slate, there might be merit in its reasoning. However, there is a long line of authority holding that intellectual property licensing agreements such as the SLA are executory contracts. *See, e.g., Everex Sys., Inc. v. Cadtrak Corp. (In re CFLC, Inc.)*, 89 F.3d 673, 677 (9th Cir. 1996); *In re Access Beyond Techs., Inc.*, 237 B.R. 32, 43-44 (Bankr. D. Del. 1999). I find these authorities persuasive, and I believe they render the Bankruptcy Court's ruling on the question erroneous.

---

[1] Unfortunately, I am in the midst of three to four months of multi-defendant criminal trials, and my schedule does not permit me to write a more formal opinion.



B. <u>May Sunterra Assume the SLA under 11 U.S.C. § 365(c)?</u>

11 U.S.C. § 365(c) provides as follows:

> The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—
>     (1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and
>     (B) such party does not consent to such assumption or assignment . . . .

For present purposes the critical five words are "may not assume or assign" contained in the first line of the section. If these words are interpreted literally, Sunterra may not *assume* the SLA because it could not *assign* it in light of the fact that federal copyright law is "applicable law" that would excuse RCC from accepting performance from an entity other than Sunterra. *See, e.g., In re CFLC*, 89 F.3d at 679; *In re Golden Books Family Entm't, Inc.*, 269 B.R. 300, 309 (Bankr. D. Del. 2001).

This is the result dictated by the courts of appeal that have applied what they have characterized as the "hypothetical test." *Perlman v. Catapult Entm't, Inc. (In re Catapult Entm't, Inc.)*, 165 F.3d 747, 750 (9th Cir. 1999); *City of Jamestown v. James Cable Partners, L.P. (In re James Cable Partners, L.P.)*, 27 F.3d 534, 537-38 (11th Cir. 1994); *In re West Elec. Inc.*, 852 F.2d 79, 83 (3rd Cir. 1988). This hypothetical test (which RCC reasonably suggests might be more aptly called the "literal test") has the obvious virtue of being consistent with the dictate of the Supreme Court that the plain meaning of a statute must be enforced when its terms are unambiguous. *See, e.g., Patterson v. Shumate*, 504 U.S. 753, 757-59 (1992).

Nevertheless, the First Circuit and numerous bankruptcy courts have instead adopted what is called the "actual test."[2] *Institut Pasteur v. Cambridge Biotech Corp.*, 104 F.3d 489, 493 (1st Cir. 1997); *In re Cardinal Indus., Inc.*, 116 B.R. 964, 978-81 (Bankr. S.D. Ohio 1990). This test focuses upon whether the debtor in fact intends to assign the executory contract after assuming it. *See Institut Pasteur*, 104 F.3d at 493. The test has the weakness of reading the statutory language "assume or assign" to mean "assume and assign." However, it has the virtue of being consistent with the general goals of Chapter 11 because it allows licensees to benefit from the protections of the bankruptcy law while encouraging the maximization of the economic value of the debtor's estate. *See In re Cardinal*, 116 B.R. at 981.

The Fourth Circuit has not yet ruled upon the question of which test to reply. It may be that the Court will follow the other courts of appeal that have held that the statutory language must be read literally and have adopted the hypothetical test. However, being required to exercise my own judgment, I find the actual test to be far more harmonious with the statutory scheme. Although the plain meaning of statutes must generally be enforced, there is a competing principle that statutes should not be interpreted to produce results that are unreasonable in light of the drafters' intentions. *See, e.g., United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989). The only explanation that RCC has been able to articulate to support its construction of

---

[2]Sunterra wrongly contends that my decision in *In re Antonelli*, 148 B.R. 443 (D. Md. 1992), supports adoption of the actual test. What I held in *Antonelli* is that § 365(c) did not prevent the debtor from assigning his interests in several matured real estate partnerships to a creditors committee. That question required an analysis of the nature of the interests sought to be assigned and the interplay between § 365(c)(1) and § 365(f). Here, the assignability of the SLA is clearly precluded by federal copyright law. Therefore, the dispositive issue is not whether the SLA could be assigned, but rather what the "assume or assign" language in § 365(c)(1) itself means.

the statutory language is that Congress intended to give greater leverage in Chapter 11 proceedings to creditors under contracts not assignable under § 365(c) than to other creditors or to the debtors themselves. RCC has cited nothing in the legislative history to evidence such an intent, and absent such history there is no reason to infer that Congress possessed such an intent.

Of course, it is entirely reasonable to infer, as is often said in the § 356(c) context, that a party who has contracted for a performance by Luciano Pavarotti should not have to accept a substituted performance from Michael Jackson if Pavarotti went into Chapter 11 and assigned the contract to Jackson. However, it is quite different—and quite unreasonable—to posit that the same party should have the right to refuse performance by Pavarotti if Pavarotti agreed to assume the contract and abide by its terms. It is precisely that result which would follow from RCC's interpretation of § 356(c), and I therefore decline to follow it.[3]

Date: January 10, 2003

/s/ J. Frederick Motz
J. Frederick Motz
United States District Judge

---

[3] Sunterra makes two ancillary contentions, both of which are rendered academic by my holding that Sunterra may assume the SLA. Moreover, neither is persuasive. First, it asserts that RCC consented to the assignment in § 5.11 of the SLA, which provides that "[n]either party may assign this License without receiving the prior written consent of the other party, which shall not be unreasonably withheld." The fallacy in this contention is that there is an obvious difference between an affirmative act of consent and an agreement not to unreasonably withhold consent. Second, Sunterra argues that even if it cannot assume the SLA, it may nevertheless use the licensed software, giving RCC only a pre-petition claim for monetary damages. Again, the contention fails. The rights and obligations of a debtor and creditor following rejection are the same as if the debtor had breached the contract before filing for bankruptcy. *In re Alongi*, 272 B.R. 148, 154 (Bankr. D. Md. 2001). Under Maryland law—which applies here, *see id.* at 155; *Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 387 (2d Cir. 1997)—if one party to a contract materially breaches it, the other party has the right of rescission. *Washington Homes, Inc. v. Interstate Land Dev. Co.*, 281 Md. 712, 728, 382 A.2d 555, 563 (1978). As RCC points out, if Sunterra's contention were correct and a debtor could reject a contract and still retain its benefits, there would be no reason for a debtor ever to assume a contract.